# EXHIBIT 1

1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF WASHINGTON
8                            AT SEATTLE

9    CHRISTINE DAVID and RODNEY CLURE,
     individually and on behalf of all others similarly      Case No.
10   situated,

11                          Plaintiffs,                      DECLARATION OF DANIEL L.
                                                             THIEME IN SUPPORT OF
12          v.                                               DEFENDANT'S NOTICE OF
                                                             REMOVAL
13   BANKERS LIFE AND CASUALTY
     COMPANY, a foreign corporation,
14
                            Defendant.
15

16          I, DANIEL L. THIEME, do hereby declare as follows:

17          1.      I am an attorney with Littler Mendelson, P.C.  I am the lead counsel in this case

18   for Defendant Bankers Life and Casualty Company ("Bankers" or "Defendant").    I am

19   submitting this declaration in support of Defendant's Notice of Removal.  I am over the age of

20   eighteen, have personal knowledge of the facts stated in this declaration, and am competent to

21   testify thereto.

22          2.      Attached hereto as Exhibit A is a true and correct copy of the First Amended

23   Class Action Complaint in this action.

24          3.      On July 24, 2013, I took the deposition in this case of named Plaintiff Christine

25   David.  Ms. David testified that she would be teaching English in China for two years starting in

26

DECL OF D. THIEME ISO DEF'S NOTICE OF REMOVAL - 1
FIRMWIDE:127086344.2 079456.1001

1   August of 2013, but also would be returning to Seattle from time to time. A true and correct

2   copy of page 34 of her deposition is attached hereto as Exhibit B.

3        4.      The King County Superior Court issued Findings of Fact, Conclusions of Law,

4   and Order Regarding Plaintiffs' Motion for Class Certification in this action on January 22, 2014

5   ("Findings of Fact"). A true and correct copy of the Findings of Fact is attached hereto as

6   Exhibit C. In Conclusion of Law No. 6 on page 6, the Court found that there are more than

7   1,000 Agents in the class.

8        5.      Bankers' Interrogatory No. 2 in its third set of discovery in this action asked the

9   Plaintiffs to "[s]tate the amount of damages sought by the Class in this case, and describe in

10  detail how the amount is calculated." Plaintiff first answered this Interrogatory on March 17,

11  2014, indicating that plaintiff was in the process of calculating the damages. On May 19, 2014,

12  Plaintiffs supplemented their answer to Interrogatory No. 2, stating that the total class damages

13  for the time period from June 16, 2008 through December 31, 2011 are estimated at $16,928,996.

14  A true and correct copy of Plaintiffs' May 19, 2014 supplemental response (which also includes

15  the Interrogatory and Plaintiff's first response) is attached hereto as Exhibit D.

16       I declare under penalty of perjury that the foregoing is true and correct.

17       Executed this 22nd day of May 2014, at Seattle, Washington.

18

19                              s/ Daniel L. Thieme
                                DANIEL L. THIEME

20

21

22

23

24

25

26

DECL OF D. THIEME ISO DEF'S NOTICE OF REMOVAL - 2
FIRMWIDE:127086344.2 079456.1001

LITTLER MENDELSON, P.C.
One Union Square
600 University Street, Suite 3200
Seattle, WA  98101.3122
206.623.3300

1

## CERTIFICATE OF SERVICE

2        I am a resident of the State of Washington, over the age of eighteen years, and not a party

3   to the within action. My business address is One Union Square, 600 University Street, Suite

4   3200, Seattle, Washington 98101.3122. I certify that on May 22, 2014, I filed the foregoing

5   document with the Clerk of the Court using the CM/ECF System.

6        I further certify that I served a true copy of the foregoing document in the manner

7   indicated on the person(s) set forth below:

8   ☐   by emailing a true copy of the same to the email addresses of the person(s) set forth below.

9   ☐   by placing a true copy of the same for collection and mailing following the firm's ordinary business practice
    in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at Seattle,
10  Washington addressed as set forth below.

11  ☒   by causing a copy of the same to be hand-delivered to the person(s) at the address(es) set forth below.

12      **Martin S. Garfinkel, WSBA # 20714**
13      **garfinkel@sgb-law.com**
        **Adam J. Berger, WSBA #20787**
14      **berger@sgb-law.com**
        **Lindsay L. Hahm, WSBA #37141**
15      **halm@sgb-law.com**
        **SCHROETER GOLDMARK & BENDER**
16      **810 Third Avenue, Suite 500**
        **Seattle, Washington 98104**
17      **Tel: (206) 622-8000**
        **Fax: (206) 682-2305**
18
        **ATTORNEYS FOR PLAINTIFF**
19

20       I declare under the penalty of perjury under the laws of the State of Washington that the

21  above is true and correct. Executed on May 22, 2014, at Seattle, Washington.

22

23                              _s/Sally Swearinger_
                                sswearinger@littler.com
24

25

26

DECL OF D. THIEME ISO DEF'S NOTICE OF REMOVAL - 3
FIRMWIDE:127086344.2 079456.1001

# EXHIBIT A

1

The Honorable Theresa Doyle
Trial Date: June 16, 2014

2

3

4

5

6

7

8

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

9

10

CHRISTINE DAVID and RODNEY
CLURE, individually and on behalf of all
others similarly situated,

No.  11-2-21154-1 SEA

11

FIRST AMENDED CLASS ACTION
COMPLAINT

12

Plaintiffs,

13

v.

14

BANKERS LIFE AND CASUALTY
COMPANY, a foreign corporation; and
ALBERT HAWKS, an individual,

15

16

Defendants.

17

18

## I.    INTRODUCTORY STATEMENT

19

This is a class action brought under the Washington Minimum Wage Act ("MWA"),

20

Ch. 49.46 RCW, on behalf of all persons currently or formerly employed as Agents by

21

Defendant Bankers Life and Casualty Company in the State of Washington at any time from

22

three years prior to the filing of this Complaint to the present and hereafter.  Plaintiffs allege

23

that they and other Agents were misclassified as independent contractors by Defendants and

24

were thereby denied proper compensation, including minimum wages and overtime pay,

25

required under the MWA.

26

## II.   JURISDICTION AND VENUE

1.     Jurisdiction and venue are proper in this Court under RCW 4.12.020 as all or some of the acts and omissions giving rise to this case took place in King County, Washington.

## III.   PARTIES

2.     Plaintiff Christine David is a resident of Seattle, Washington and was formerly employed by Bankers Life and Casualty Company as an Agent in Washington State.

3.     Plaintiff Rodney Clure is a resident of Bellevue, Washington and was formerly employed by Bankers Life and Casualty Company as an Agent in Washington State.

4.     Defendant Bankers Life and Casualty Company ("Bankers") is a foreign corporation with a principal place of business in Chicago, Illinois.  At all times material hereto, Bankers conducted business in King County and the State of Washington.

5.     Defendant Albert Hawks is a resident of Washington and, at all times material hereto, is and was the branch manager and regional manager for Bankers in Washington State.

6.     Bankers and Albert Hawks are and were employers within the meaning of the MWA.

## IV.   FACTUAL ALLEGATIONS

7.     Plaintiff and other persons hired by Defendants as Agents were engaged to sell annuities and other Bankers insurance products in Washington State.  Bankers' insurance products are primarily targeted at senior citizens.

FIRST AMENDED CLASS ACTION COMPLAINT – 2
352668

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

8.      Defendants classified Plaintiffs and other Agents in Washington State as independent contractors rather than as employees.

9.      Plaintiffs and other Agents were paid on a commission basis.

10.     The Agents were economically dependent upon Bankers in all critical respects.  Bankers controlled the manner and means of the work performed by the Agents; the Agents could not increase their profits by their managerial skill; any investment made by Agents in equipment or material was minimal; Bankers did not require any experience in the industry or as a salesperson and the level of skill required for the work was consistent with an employment relationship; Agents were given reason to expect a longstanding relationship with Bankers Life; and the work of the Agents -- selling of insurance products -- was integral to the business model of Bankers Life.

11.     Plaintiff and other Agents routinely worked more than 40 hours per week during the three years prior to the filing of this complaint, but were never paid time and a half overtime wages by Defendants for hours worked in excess of 40 hours per week.

12.     There were workweeks during the three years prior to the filing of this complaint when the compensation paid to Plaintiffs and other Agents was less than the minimum wage per hour set by the Washington Department of Labor and Industries under the MWA.

13.     Defendants' failure to pay overtime compensation or, in some weeks, minimum wages was due to Defendants' misclassification of Plaintiffs and other Agents as independent contractors, when, in fact, they were statutory employees.

## V.    CLASS ALLEGATIONS

14.     Plaintiffs file this lawsuit pursuant to the MWA and CR 23 on behalf of themselves and similarly situated individuals employed by Defendants.  The class of

FIRST AMENDED CLASS ACTION COMPLAINT – 3
352668

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

potential plaintiffs encompassed by this claim includes:

> All persons hired by Bankers who worked as Agents (or in similar job classifications) during the three years prior to the filing of this lawsuit and thereafter whom Bankers classified as independent contractors.

15.     The action is properly maintainable under CR 23(a), (b)(2) and (b)(3).

16.     The class described above is sufficiently numerous such that joinder of all of them is impractical, as required by CR 23(a)(1).

17.     Pursuant to CR 23(a)(2), there are questions of law and fact common to the class, including, but not limited to: whether class members were misclassified as independent contractors by Defendants; whether class members are subject to the overtime requirements of the MWA; whether Defendants failed to pay class members one and one-half times their regular rate of pay for overtime work; and whether Defendants failed to pay class members minimum wages in any workweeks.

18.     Pursuant to CR 23(a)(3), Plaintiffs' wage and hour claims are typical of the claims of all class members and of Defendants' anticipated affirmative defenses thereto.

19.     Plaintiffs will fairly and adequately protect the interests of the class as required by CR 23(a)(4).

20.     Pursuant to CR 23(b)(2), Defendants have acted on grounds generally applicable to the class members by uniformly misclassifying them as independent contractors, making declaratory relief appropriate with respect to the class as a whole.

21.     Pursuant to CR 23(b)(3), class certification is appropriate here because questions of law or fact common to members of the class predominate over any questions affecting only individual members and because a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## VI.   CLAIMS FOR RELIEF

**A.   First Claim - Failure To Pay Overtime Wages In Violation Of the MWA**

22.     Plaintiffs repeat and reallege the prior allegations of this complaint.

23.     Defendants' failure to pay Plaintiffs and the class members one and one-half times their regular rate of pay for hours worked in excess of 40 in their workweeks constitutes a violation of RCW 49.46.130.

24.     As a result of Defendants' acts and omissions, Plaintiffs and the class members have been damaged in amounts as will be proven at trial.

**B.   Second Claim – Failure To Pay Minimum Wages In Violation Of The MWA**

25.     Plaintiffs repeat and reallege the prior allegations of this complaint.

26.     Defendants' failure to pay Plaintiffs and the class members at least the minimum wage per hour for each hour worked in their workweeks constitutes a violation of RCW 49.46.020.

27.     As a result of Defendants' acts and omissions, Plaintiffs and the class members have been damaged in amounts as will be proven at trial.

## VII.   PRAYER FOR RELIEF

28.     The total recovery alleged by Plaintiffs in this case, including reasonable attorneys' fees but excluding interest and costs, is less than $75,000 for the named Plaintiffs individually and $5,000,000 in the aggregate for Plaintiffs and the class as a whole.

29.     Wherefore, Plaintiffs, individually and on behalf of the similarly situated persons, pray for relief as follows:

        a.     Certification of this case as a class action pursuant to CR 23 and the MWA;

FIRST AMENDED CLASS ACTION COMPLAINT – 5
352668

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1         b.     Damages for lost wages in amounts to be proven at trial;

2         c.     Attorneys' fees and costs pursuant to RCW 49.46.090 and RCW

3                49.48.030;

4         d.     Prejudgment interest; and

5         e.     Such other and further relief as the Court deems just and proper.

6    DATED this 28th day of August, 2013.

7

8                   SCHROETER, GOLDMARK & BENDER

9

10                  Adam J. Berger, WSBA #20714

11                  Martin S. Garfinkel, WSBA #20787
                    Lindsay L. Halm, WSBA #37141

12                  Counsel for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## DECLARATION OF SERVICE

2      I, Sheila Cronan, a resident of the County of Kitsap, declare under penalty of perjury

3   under the laws of the State of Washington that on August 28, 2013, I caused to be emailed

4   and placed in the U.S. Mail, first class, postage prepaid, a true and correct copy of this

5   document addressed to counsel of record, as follows:

6

7          Daniel L. Thieme
8          Ryan P. Hammond
           Rachelle L. Wills
9          Littler Mendelson PC
           600 University Street, Suite 3200
10         Seattle, WA  98101

11         Tyler L. Farmer
12         Calfo Harrigan Leyh & Eakes LLP
           999 Third Avenue, Suite 4400
13         Seattle, WA  98104

14

15      DATED at Seattle, Washington this 28th day of August, 2013.

16

17                                          _____
18                                          SHEILA CRONAN
                                            Paralegal
19

20

21

22

23

24

25

26

FIRST AMENDED CLASS ACTION COMPLAINT – 7
352668

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

# EXHIBIT B

Page 1

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

-----------------------------------------------------------

CHRISTINE DAVID, individually )
and on behalf of all others   )
similarly situated,           )
                              )
            Plaintiff,        )
                              )
     vs.                      )    No. 11-2-21154-1 SEA
                              )
BANKERS LIFE AND CASUALTY     )
COMPANY, a foreign            )
corporation; and ALBERT       )
HAWKS, an individual,         )
                              )
            Defendants.       )

-----------------------------------------------------------

VIDEOTAPED DEPOSITION UPON ORAL EXAMINATION

OF

CHRISTINE MARIE DAVID

-----------------------------------------------------------

Littler Mendelson, P.C.
600 University Street, Suite 3200
Seattle, WA 98101-3122

DATE:  July 24, 2013

REPORTED BY: Jill L. Cheeseman, RPR  CCR 2404

Christine Marie David                                    July 24, 2013

Page 2

```
 1              A P P E A R A N C E S
 2
        FOR PLAINTIFF:
 3
                ADAM J. BERGER
 4              Schroeter Goldmark & Bender, P.S.
                810 3rd Avenue, Suite 500
 5              Seattle, WA 98104
                206-622-8000
 6              berger@sgb-law.com
 7      FOR DEFENDANT BANKERS LIFE AND CASUALTY:
 8              DANIEL L. THIEME
                RYAN P. HAMMOND
 9              RACHELLE L. WILLS
                Littler Mendelson, P.C.
10              600 University Street, Suite 3200
                Seattle, WA 98101-3122
11              206-381-4909
                dthieme@littler.com
12              rhammond@littler.com
                rwills@littler.com
13
        FOR DEFENDANT ALBERT HAWKS:
14
                TYLER L. FARMER
15              Calfo Harrigan Leyh & Eakes
                999 3rd Avenue, Suite 4400
16              Seattle, WA 98104
                206-623-1700
17              tylerf@calfoharrigan.com
18      ALSO PRESENT:
19              LOREN E. DEAN
                Bankers Life and Casualty
20              11201 S.E. 8th Street, Suite 140
                Bellevue, WA 98004
21
        VIDEOGRAPHER:
22
                BILL TAKOS
23              Seattle Deposition Reporters, L.L.C.
                600 University Street, Suite 320
24              Seattle, WA 98101
                206-622-6661
25              courtreporters@seadep.com
```

Christine Marie David                                    July 24, 2013

Page 3

1                         E X A M I N A T I O N

2      WITNESS              MR. THIEME    MR. FARMER    MR. BERGER

3      CHRISTINE MARIE          6            186           210
       DAVID                  216            241
4

5
                            E X H I B I T S
6
       DESCRIPTION                                        PAGE
7
       1    Resumé Christine M. David                       9
8           (DAVID 000446 – 449)

9      2    Resumé Christine Marie David                   10
            (Confidential BL 01293 – 1297)
10
       3    Agent Contract                                 38
11          (DAVID 000006 – 33)

12     4    Declaration Page                               39
            (Confidential BL 00060)
13
       5    Endorsements                                   40
14          (Confidential BL 00048 – 53)

15     6    Agent License, Appointment Certificate,        45
            Insurance Producer License
16          (DAVID 000486 – 487)

17     7    Credit Card Authorization dated                50
            August 31, 2009
18          (Confidential BL 01269)

19     8    Hardware and Software Statement dated          51
            August 31, 2009
20          (Confidential BL 00038)

21     9    Geico Insurance ID Card                        52
            (Confidential BL 01259)
22
       *  10    Form 1040 for 2009                        179
23              (Confidential DAVID 000531 – 545)

24     *  11    Form 1040 for 2010                        181
                (Confidential DAVID 000557 – 568)
25

Christine Marie David                                    July 24, 2013

```
                                                              Page 4
1                     E X H I B I T S (Continued)

2    DESCRIPTION                                          PAGE

3    *  12    Agent's Compensation Statement               183
              As of December 15,2009
4             (Attorneys Eyes Only BL)

5    *      Exhibits 10, 11 and 12 with sealed portion of
            transcript, pursuant to protective order.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Christine Marie David                                    July 24, 2013

Page 5

```
 1              Seattle, Washington, Wednesday, July 24, 2013
 2                          9:03 a.m.
 3         -----------------------------------
 4              VIDEOGRAPHER:  Here begins the video
 5    deposition of Christine David.  This is Tape 1, Volume
 6    1, in the matter of David versus Bankers Life in the
 7    Superior Court of State of Washington in and for King
 8    County, Case Number 11-2-21154-1 SEA.
 9              Today's date is Wednesday, July 24, 2013.
10    The time on the video monitor is 9:03 a.m.  The
11    videographer today is Bill Takos, video specialist for
12    Seattle Deposition Reporters located in Seattle,
13    Washington.  The phone number is 206-622-6661.  The
14    court reporter is Jill Cheeseman, also from Seattle
15    Deposition Reporters.
16              Today's deposition is taken on behalf of
17    defendant, taking place at 600 University Street, Suite
18    3200, Seattle, Washington.
19              Counsel and all present, please introduce
20    yourselves and whom you represent.
21              MR. BERGER:  Adam Berger from Schroeter
22    Goldmark and Bender on behalf of plaintiff.
23              MR. THIEME:  Dan Thieme, Littler Mendelson,
24    on behalf of defendant.
25              MR. HAMMOND:  Ryan Hammond, Littler
```

Christine Marie David                              July 24, 2013

Page 34

1    on to graduate school and completed that just recently.

2          Q.    Congratulations.

3          A.    Thank you.

4          Q.    What was your undergraduate degree in?

5          A.    Political science.

6          Q.    And your graduate degree?

7          A.    In teaching English as a second language.

8          Q.    And I believe I understand that something is

9    taking you away from this country for a period of time;

10   is that right?

11         A.    The teaching English as a second language.

12         Q.    Where overseas are you going to teach

13   English?

14         A.    I'll be teaching at Shantou University in

15   Shantou, Guangdong Province, China.

16         Q.    When does that begin?

17         A.    That begins August 19.

18         Q.    And how long are you currently scheduled to

19   be there teaching English?

20         A.    I have a two year contract.

21         Q.    Life is uncertain of course; but as you sit

22   here today, do you expect to be over in China for that

23   two year period?

24         A.    I expect to be in China for that two year

25   period.  I expect to be back in the Seattle area in

Christine Marie David                                    July 24, 2013

Page 246

```
 1                    C E R T I F I C A T E
 2    STATE OF WASHINGTON   )
                            ) ss.
 3    COUNTY OF SNOHOMISH   )
 4
              I, the undersigned Registered Professional
 5
      Reporter and Washington Certified Court Reporter,
 6
      hereby certify that the foregoing videotaped deposition
 7
      upon oral examination of CHRISTINE MARIE DAVID was
 8
      taken stenographically before me on July 24, 2013, and
 9
      transcribed under my direction;
10
              That the witness was duly sworn by me
11
      pursuant to RCW 5.28.010 to testify truthfully; that
12
      the transcript of the videotaped deposition is a full,
13
      true and correct transcript to the best of my ability;
14
      that I am neither attorney for nor a relative or
15
      employee of any of the parties to the action or any
16
      attorney or counsel employed by the parties hereto nor
17
      financially interested in its outcome.
18
              IN WITNESS WHEREOF, I have hereunto set my
19
      hand this 2nd day of August 2013.
20
21
              \S\JILL L. CHEESEMAN
22
      _____
23    NCRA Registered Professional Reporter
      Washington Certified Court Reporter No. 2404
24    License expires February 23, 2014.
25
```

# EXHIBIT C

RECEIVED

JAN 2 4 2014

LITTLER MENDELSON, P.C.

Honorable Theresa Doyle
Trial Date: June 16, 2014

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

CHRISTINE DAVID and RODNEY
CLURE, individually and on behalf of all
others similarly situated,

                              Plaintiffs,

    v.

BANKERS LIFE AND CASUALTY
COMPANY, a foreign corporation; and
ALBERT HAWKS, an individual,

                             Defendants.

No. 11-2-21154-1 SEA

[PROPOSED] FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND
ORDER REGARDING PLAINTIFFS'
MOTION FOR CLASS
CERTIFICATION

Pursuant to the Court's Memorandum Decision of December 2, 2013, plaintiffs
submit the following proposed findings and conclusions regarding the CR 23 factors in this
case.[1]

-----

[1] Citations in the following findings and conclusions are to the Declarations of Rod Clure, Christine David, Anthony Gaynes, Gary Glassburn, David Hendry, Maureen Hoff, Stephanie Huggins, Shawn Layton, Christopher Mitchell, Richard Keppler, Bill Blankenship, Erina Bowie, Nicolas Crowner, Lillian Neil, Daniel Graf, Jacquelynn McCormick, Loren Boles, Stephen Cummings, and George Francisco, all of whom are former agents with Bankers Life. Mr. Cummings and Mr. Layton also filed Second Declarations, which are cited. Exhibit citations are to the exhibits appended to the first and second Declarations of Adam J. Berger. Also cited are the declarations of Bankers managers and agents Charles "Bill" Berryhill, Rich Carter, Lawrence "Loren" Dean, Kip Stallcop, Danielle Fawaz, Jules Kendrick, Sara Dinoto, Alina Labizon. Carol Stringer Adado, Jonathan Gans and D.J. Fox submitted by Bankers.

[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER REGARDING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 1

ORIGINAL

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

# FINDINGS OF FACT

1.      Plaintiffs Christine David and Rodney Clure seek certification pursuant to Civil Rule 23(a) and (b)(3) of a class of agents who sold insurance policies in the State of Washington for defendant Bankers Life and Casualty Company ("Bankers") between June 16, 2008 and December 2, 2013, the date of the Court's Memorandum Decision Granting Plaintiffs' Motion for Class Certification.  These agents worked out of two branch offices (Bellevue and Tacoma/University Place) and four satellite offices (Bellingham, Walla Walla, Spokane, and Vancouver). Co-defendant Albert Hawks was the ~~regional and/or~~ branch *sales manager for the Bellevue office and regional manager* ~~manager~~ for three ~~of those~~ offices (Bellevue, Bellingham, and Walla Walla) for ~~part of the~~ ~~proposed class period.~~ *at least June 2008 to July 2011.*

2.      Bankers labeled plaintiffs and the putative class of agents "independent contractors." Plaintiffs allege they and the other agents were employees under the Washington Minimum Wage Act, RCW 49.46, *et seq.* ("MWA"), and were denied its protections of minimum wage and overtime pay by virtue of their classification as independent contractors.

3.      The "class list" produced by Bankers to plaintiffs in March 2013 shows that approximately 1,156 agents had worked for the company in Washington between June 16, 2008 and the date of that list. Berger Decl. ¶6.

4.      Plaintiffs have proffered substantial evidence that Bankers followed common policies and practices which applied to the employment classification and working conditions of all agents in Washington during the proposed class period.

5.      All agents signed the same contract with Bankers, and all agents were classified as independent contractors in accordance with that contract and company policy. Berger Decl.

SCHROETER GOLDMARK *&* BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

Ex. 17 (Agent Contract).  All agents were paid under the same commission schedule, which was subject to unilateral change by Bankers. Berger Decl. Ex. 15 (Commission Schedule).

6.      When an agent left Bankers Life, the policyholders served by that agent remained the client of Bankers, not of the agent. In other words, agents did not have their own "book of business."[2]

7.      The proposed class members were "captive" agents.[3] Bankers controlled the products that agents could sell and prohibited agents from selling the products of competitor insurers.[4]

8.      Agents worked out of Bankers' offices or out of their home offices; there is no evidence in the record that any leased commercial space. The form of business card proscribed by Bankers also required agents to list the Bankers office as their business address. Berger Decl. Ex. 39 (Field Compliance Alert), at BL 2758.

9.      Bankers' offices had work and meeting schedules that agents were expected to follow, and agents could be disciplined for failing to comply.[5]

10.     Bankers required all agents to go through the same New Agent Success and Winners Edge training programs.[6]

---

[2] Layton Decl. ¶15; Mitchell Decl. ¶10; Cummings Decl. ¶10; Berger Decl. Ex. 44 ("Conservation Procedure"), at BL 541 (describing that Agent does not "own" policyholder household, and servicing can be reassigned by Sales Manager); Berger Decl. Ex. 45 (Complaint in lawsuit filed by Bankers against former agents for, *inter alia*, soliciting customers away from the company).

[3] Cummings Decl. ¶15; David Decl. ¶8; McCormick Decl. ¶3; Berger Decl. Ex. 42.

[4] Second Layton Decl. ¶¶3-8; Second Cummings Decl. ¶¶3-6.

[5] Berger Decl. Ex. 3 (Office Schedules), Ex. 16 ("Seattle Steps for Success"); Blankenship Decl. ¶¶5-6; Layton Decl. ¶3; Keppler Decl. ¶2; Neil Decl. ¶7; Boles Decl. ¶4; McCormick Decl. ¶6; Mitchell Decl., ¶¶ 2,6; Francisco Decl. ¶4; Crowner Decl. ¶6; Clure Decl. ¶¶ 8, 10; Hendry Decl. ¶7; Gaynes Decl. ¶9; Bowie Decl. ¶5. *See also* Carter Decl. ¶7 (Bankers declarant, acknowledging written schedule agents were encouraged to follow); Dean Decl. ¶8 (same); Stallcop Decl. ¶9 (same).

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

11.     Bankers controlled distribution of sales "leads,"[7] provided standard telephone scripts and required approval of any different scripts,[8] imposed restrictions on and required corporate approval of other advertising and marketing, including presentation materials and use of social media,[9] and expected completion of certain forms, including a standardized "Fact Finder" during and following sales calls.[10]

12.     Bankers also set targets for agents regarding the number of prospecting calls and in-person appointments they should make,[11] and Bankers' managers monitored agents' compliance with these expectations.[12]

13.     Bankers expected agents to keep in daily contact with their managers. Berger Decl. Ex. 16 ("Seattle Steps for Success").

14.     Bankers also warned agents when they failed to return client calls within 24 hours,[13] and expected agents to deliver policies in person to customers within a set period of time after the policies were issued.[14]

---

[6] Berger Decl. Ex. 4 ("Welcome New Agent" letter), Ex. 7 (Bankers Life Branch Sales Manager ["BSM"] Manual), at BL 981-82; Glassburn Decl. ¶4; Mitchell Decl. ¶4; Clure Decl.¶5; David Decl. ¶¶6, 11; Layton Decl. ¶8 (describing mandatory new agent training schedule).

[7] Cummings Decl. ¶8; David Decl. ¶10; Boles Decl. ¶6; Francisco Decl. ¶7; Glassburn Decl. ¶3; Layton Decl. ¶¶10,11; Gaynes Decl. ¶6.

[8] Cummings Decl. ¶4; McCormick Decl. ¶5; Berryhill Decl. ¶ 15; Carter Decl. ¶ 18; Berger Decl. Ex. 7 (BSM Manual), at BL 983, Ex. 23(Telephone Prospecting Training), at BL 1872 (instructing Agents, "do not stray from the script in any way"); Second Berger Decl. ¶¶4-5 (submitting and quoting training video).

[9] Bowie Decl. ¶6; Crowner Decl. ¶8; Hoff Decl.¶ 8; *see also* Berger Decl. Ex. 7 (BSM Manual), at BL 982-86, Ex. 17 (Agent Contract), at BL 10, Ex. 25 (Agent Information and Procedure ["Agent"] Manual), at BL 710, Ex. 33 (Telemarketing Guidelines), Ex. 34 (Field Compliance Alert), Ex. 35 (Field Compliance Alert), Ex. 36 (Agent Compliance Guidelines) (prohibiting websites and restricting use of social media).

[10] Berger Decl. Ex. 7 (BSM Manual), at BL 985-86, Ex. 20 (New Agent Success Training – Fact Finding), at BL 1775.

[11] Berger Decl. Ex. 12 (New Agent Success Workshop - Prospecting ), Ex. 16 ("Seattle Steps for Success"); Keppler Decl. ¶5; Layton Decl. ¶8; David Decl. ¶3; Cummins Decl. ¶¶4, 6.

[12] Boles Decl. ¶5; Cummings Decl. ¶6; Neil Decl. ¶7; Layton Decl. ¶8; David Decl. ¶3.

[13] Second Berger Decl. ¶6 & Ex. 4 (written warning).

[14] Cummings ¶4; Gaynes ¶7. Ex. 7 (BSM Manual), at BL 989; Ex. 25 (Agent Manual), at BL 764.

[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER REGARDING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 4

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

*Bankers*

15.    A number of Bankers' declarants acknowledge the control that ~~branch managers,~~ ~~specifically Mr. Hawks,~~ could and did exercise over agents' production measures, hours, and schedules.[15]

16.    Bankers did not require agents to have any prior experience in sales or insurance. Layton Decl. ¶5; Cummings Decl. ¶11.

17.    All agents generally incurred the same types of expenses and made the same types of investments for their work, including licensing fees, laptops, cell phones, vehicles, automobile insurance, gasoline, and office supplies. Glassburn Decl. ¶5; Graf Decl. ¶5.

18.    Although many agents did not last more than a few months on the job, they were recruited with the promise of a long-term career and were held out to the public as "career" agents.[16] And there appears to be no dispute that the work performed by the agents was an integral and permanent part of Bankers' insurance business.

## CONCLUSIONS OF LAW

1.    Washington law favors resolution of cases through class actions, when appropriate. The requirements of CR 23 are liberally construed toward this end. *Nelson v. Appleway Chevrolet, Inc.*, 160 Wash.2d 173, 157 P.3d 847 (2007). Often noted in favor of allowing certification is the "state policy favoring aggregation of small claims for purposes of efficiency, deterrence, and access to justice." *Scott v. Cingular Wireless*, 160 Wash.2d 843, 851-52, 856-57, 161 P.3d 1000 (2007). Because a class is always subject to a later

---

[15] Fawaz Decl. ¶¶6-7; Kendrick Decl. ¶¶8-9; Dinoto Decl. ¶8; Labizon Decl. ¶¶7-8; Adado Decl. ¶5; Gans Decl. ¶¶8,10,11; Fox Decl. ¶9.

[16] Berger Decl. Ex. 4 ("Welcome New Agent" letter), Ex. 42 Inter-Office Correspondence to Albert Hawks from Christine David, Ex. 48 (Program Introduction Instructor Guide), Ex. 49 (Bankers Life Policy brochure), at BL 3171, Ex. 50 (Bankers Life Policy brochure), at BL 3178, Ex. 51 (Agent Development Track); Berger Decl. ¶8 & Ex. 5 (quoting and submitting NASv training video); Mitchell Decl. ¶7; McCormick ¶4, Layton Decl. ¶6; Huggins Decl. ¶2; Graf Decl. ¶6; David Decl. ¶7; Crowner Decl. ¶5.

[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER REGARDING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 5

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1  decertification, trial courts should err in favor of certification. *Moeller v. Farmers Insurance*

2  *Co. of Wash.*, 155 Wash.App. 133, 148 (2010), *aff'd*, 173 Wash.2d 264 (2011). However, the

3  trial court must conduct a rigorous analysis of each of the CR 23 requirements to determine

4  whether a class action is appropriate in any particular case. *Miller v. Farmer Bros. Co.*, 115

5  Wash.App. 815, 820, 64 P.3d 49 (2003).

6

7        2.     In undertaking this review, the Court should not decide the merits of the case.

8  However, it is important for the Court to assess class certification in light of the substantive

9  law underlying plaintiffs' claims in order to determine whether the CR 23 requirements of

10  commonality and predominance are met.

11        3.     Here, the Washington Supreme Court has settled the question of the test to be

12  applied under the MWA for determining whether workers are employees or independent

13  contractors. In *Anfinson v. FedEx Ground Package System, Inc.*, 174 Wash.2d 851, 281 P.3d

14  289 (2012), the Court adopted the "economic dependence" test, which is more liberal and

15  provides broader coverage of workers under the MWA than the "right to control" test used in

16  some other jurisdictions.

17

18        4.     The central question under the "economic dependence" test is whether the

19  worker is economically dependent upon the alleged employer or is instead in business for

20  himself or herself. *Anfinson*, 174 Wash.2d at 871. Relevant factors include:

21        (1)     The degree of control exercised by the alleged employer;

22

23        (2)     The extent of the relative investments of the worker and the alleged

24  employer;

25        (3)     The degree to which the worker's opportunity for profit or loss is determined

26  by the alleged employer;

[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER REGARDING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 6

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1      (4)      The skill and initiative required in performing the job; and

2      (5)      The permanency of the relationship.

3    *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008); *Anfinson*, 174 Wash.2d

4    at 869.[17]

5

6          5.      These factors are not exclusive, and the determination must be made based

7    upon the circumstances of the whole activity. *Anfinson*, 174 Wash.2d at 870-71. Regarding

8    the degree of control factor, "[c]ontrol is only significant when it shows an individual exerts

9    such control over a meaningful part of the business that she stands as a separate economic

10   entity." *Hopkins*, 545 F.3d at 343.

11         6.      With respect to class certification under CR 23, the Court must first determine

12   whether the class is so numerous that joinder is impractical. CR 23(a)(1). There is a presumption

13   that joinder is impractical when the class numbers 40 or more. *Pierce v. Novastar*, 238 F.R.D.

14   624, 630 (W.D. Wash. 2006); *see also Miller v. Farmer Bros. Co.*, 115 Wn. App. at 821-22. As

15   noted above, there are more than 1,000 agents in the proposed class. Joinder of this many

16   potential class members is impractical, and the numerosity requirement is satisfied.

17

18         7.      The commonality requirement of CR 23(a)(2) is satisfied if the claims of the

19   putative class members arises out of a common course of conduct or a common nucleus of

20   operative facts in relation to all class members. *Pellino v. Brink's Inc.*, 164 Wash.App. 668, 683,

21   267 P.3d 383 (2011). The predominance requirement of CR 23(b)(3) is met where the common

22   questions of law or fact predominate over questions affecting only individual class members.

23   *Pellino*, 164 Wash.App. at 683 n.5. The analysis of predominance under CR 23(b)(3) is

24

25

26   _____
     [17] The *Anfinson* Court also cited *Real v. Driscoll Strawberr Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979), which
     listed a sixth factor: "whether the service rendered is an integral part of the alleged employer's business."

[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER REGARDING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 7

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

"somewhat more stringent than the CR 23(a)(2) commonality but it involves a similar inquiry." *Miller v. Farmer Bros. Co.*, 115 Wn. App. at 825.

8.    Here, common questions of fact and law predominate. As noted in the Findings of Fact above, all agents were classified by Bankers as independent contractors, signed the same Agent Contract and were paid according to the same commission schedule, which was controlled by Bankers. Bankers exerted a substantial degree of control over what products the agents could sell, as well as their training, prospecting, marketing, sales, and customer service methods. Bankers maintained office schedules and productivity measures that agents were expected to meet. When agents left Bankers, they did not take their customers with them, and agents did not establish their own commercial offices. Thus, there are significant common questions regarding the degree of control exercised by Bankers and the degree to which the agents' opportunity for profit or loss was determined by Bankers, two of the factors in the *Anfinson* test.

9.    In addition, there are numerous and predominant common questions of law and fact with respect to the other *Anfinson* factors, including whether any specialized skills were needed by agents to perform the job, the permanence of the working relationship, the relative investments of the agents and Bankers, and the centrality of the work to Bankers' business. Indeed, there appears to be little dispute that many of the facts applicable to these elements of the *Anfinson* test are common across the proposed class members, even though the parties may disagree about the conclusions to be drawn from those facts.

10.    Bankers points out differences among agents in the application of its policies regarding outside employment, work hours, training, use of telephone scripts and monitoring of sales practices, use of standard marketing products, and the like. Bankers argues that such variation in working conditions among the agents precludes a finding that common issues

[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER REGARDING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 8

predominate. However, some variation in work experience is expected in an MWA claim, and a narrow interpretation of the predominance requirement "would contravene the clear policy in this state that CR 23 should be read liberally in the interest of judicial economy." *Miller v. Farmer Bros. Co.*, 115 Wash.App. at 827.

11.     The pivotal issue is whether a trier of fact – despite this variation among agents' freedom from company policies – could still find economic dependence, the test of employee status under *Anfinson*. The Court concludes that a trier of fact could do so. It was Bankers, not the agents, who determined whether an agent would be exempt from standard company policies. Whether, considering all the circumstances, the agents were or were not in business for themselves is a question that can be answered by the finder of fact on a classwide basis.

12.     Defendants also contend that the agents were exempt from the MWA as outside salespersons. This contention does not defeat class certification. There are common questions of fact, though disputed, whether agents were free to regulate their own work hours, which is a critical element of the outside sales exemption. *See* WAC 296-128-540; Department of Labor and Industries Administrative Polic ES.A.9.7 (June 4, 2005).

13.     Representative claims are typical under CR 23(a)(3) if they are reasonably coextensive with those of absent class members. Typicality is satisfied if the claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if the representatives' claims are based on the same legal theory. *Pellino*, 164 Wash. App. at 684.

14.     It is undisputed that plaintiffs Christine David and Rod Clure worked as agents for Bankers and, like all other members of the putative class, were classified by

[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER REGARDING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 9

SCHROETER GOLDMARK *&* BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1   Bankers as independent contractors. They allege that they were economically dependent on

2   Bankers and were subject to the same company policies broadly applicable to the class

3   discussed above. *See* David Decl.; Clure Decl. Their claims that they were not paid

4   minimum wages or overtime under the MWA are the same as the claims asserted on behalf

5   of all class members. Bankers has not identified any defenses uniquely applicable to these

6   plaintiffs. Therefore, typicality is satisfied in this case.

7

8       15.     CR 23(a)(4) also requires that the named plaintiffs will adequately represent the

9   class. Courts generally consider two elements in determining whether adequacy of representation

10  is met: (l) there must be no adversity of interest between the class representative and other class

11  members; and (2) the attorneys for the class representative must be qualified to conduct the

12  proposed litigation. *Paxton v. Union Nat. Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982); *see also*

13  *DeFunis v. Odegaard*, 84 Wash.2d 617, 622, 529 P.2d 438 (1974). Here, Bankers has identified

14  no adversity of interest between the plaintiffs and the proposed class, and has not challenged the

15  adequacy of plaintiffs' counsel. The Court also finds that plaintiffs' counsel is adequate, having

16  represented numerous certified classes in litigation under the MWA and other Washington wage

17  and hour laws in the past. *See* Berger Decl.¶¶2-5.

18

19      16.     The only challenge raised by Bankers to the adequacy of the proposed class

20  representatives concerns Ms. David's current employment in China. However, Ms. David has

21  testified that she will continue to be available to consult with class counsel even while employed

22  in China, and that she will be present in the United States during the scheduled trial of this

23  matter. David Dep. Tr. 35:5-24. Her situation is distinguishable from that of the proposed class

24  representative in *Arabian v. Sony Electronics, Inc.*, 2007 WL 627977, *6 (S.D. Cal. 2007),

25  cited by Bankers, who refused to attend trial in the United States. Finally, defendants offered no

26

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

challenge to the adequacy of Mr. Clure, and the CR 23(a)(4) requirement is satisfied as long as one of the proposed representatives is adequate. For these reasons, the Court concludes that CR 23(a)(4) is satisfied here.

17.   The superiority prong of CR 23(b)(3) focuses on "a comparison of available alternatives." *Sitton v. State Farm Mutual Auto. Ins. Co.*, 116 Wash. App. 245, 256, 63 P.3d 198 (2003).   A class action for the claims in this case is superior to the alternatives of individual lawsuits or joined plaintiffs. Alternatives would pose unnecessary costs to the judicial system with multiple lawsuits concerning the same legal issue and kinds of evidence concerning agents' economic dependence on Bankers. In addition to judicial efficiency, class treatment of these claims promotes access to justice because litigation costs are prohibitive for most individuals, and some class members may be deterred from filing suit in their own names due to their ongoing work relationship with Bankers. For these reasons, the Court concludes that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy." CR 23(b)(3).

18.   ~~Notwithstanding the foregoing,~~ The Court concludes that the CR 23 requirements are not met with respect to defendant Albert Hawks. Plaintiffs seek to certify a statewide class action, but Hawks did not manage three of Bankers' six offices. He had no relationship to agents working out of those offices, and those agents could not have been economically dependent on him. Therefore, the requirements of commonality, typicality, and adequacy predominance are not met with respect to Mr. Hawks.

## ORDER

In accordance with the foregoing Findings of Fact and Conclusions of Law, the Court hereby ORDERS as follows:

[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER REGARDING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 11

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1.    Plaintiffs' motion for class certification is GRANTED as to defendant Bankers Life and Casualty Company.  The class is defined as:

> All individuals who worked as agents for Bankers Life and Casualty Company in the State of Washington at any time between June 16, 2008 and December 2, 2013 and who were classified as independent contractors.

2.    Plaintiffs' motion for class certification is DENIED as to defendant Albert Hawks.

3.    The parties shall confer and attempt to agree upon a Notice to Class Members ("Notice") no later than ~~January~~ Feb. 3 2014 **[10 calendar days after the date of this Order]**. If no agreement can be reached, each party shall submit to the Court a proposed Notice no later than February 10, 2014 **[7 calendar days after date stated in previous sentence]**;

4.    After a Notice is approved, defendants' counsel shall provide to Class Counsel, within ten (10) business days of the date of such Order, a complete and corrected list of the putative class members with their last known addresses, telephone numbers and social security numbers (such numbers shall only be used to identify correct addresses if necessary). The social security numbers shall be kept confidential in conformity with the Protective Order entered in this matter;

5.    Class members shall have thirty (30) days from the date of the Notice within which to return their exclusion requests advising counsel of their desire to opt-out of the case;

6.    Any class member who does not request exclusion may enter an appearance through counsel; and

7.    In the event any Notice is returned undeliverable, Class Counsel shall use their best efforts to obtain corrected addresses.  If corrected addresses are obtained, Class

1   Counsel shall re-mail the Notice promptly to the affected individuals, with exception that the

2   deadline for returning the exclusion forms shall be at least thirty (30) days after the date of

3   mailing.

4          DATED this ㉒ day of January, 2014.

5

6

7                                              HONORABLE THERESA DOYLE

8

9   Presented by:

10  SCHROETER GOLDMARK & BENDER

11

12  Adam J. Berger, WSBA #20714
    Lindsay L. Halm, WSBA #37141
13  Counsel for Plaintiffs/Class Counsel

14

15

16

17

18

19

20

21

22

23

24

25

26

[PROPOSED] FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER REGARDING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION - 13

SCHROETER GOLDMARK & BENDER
810 Third Avenue • Suite 500 • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

# EXHIBIT D

1

## INTERROGATORIES

2   **INTERROGATORY NO. 2:**  State the amount of damages sought by the Class in this case, and

3   describe in detail how that amount is calculated.

4   **RESPONSE TO INTERROGATORY NO. 1:**

5   Plaintiffs are in the process of calculating these damages, which will be based on the average

6   hours worked by Class Members during the Class Period and their income for the Class Period as

7   reflected in the 1099s produced by Defendant. Back pay for overtime hours will be calculated

8   according to the stand methodology described in RCW 49.46.130(1), Department of Labor and

9   Industries Administrative Policy ES.A.8.2, and *Fiore v. PPG Industries, Inc.*, 169 Wn. App.

10  325, 344-47, 279 P.3d 972 (Div. I 2012). For weeks in which Class Members had no income or

11  income less than the minimum wage per hour worked, Plaintiffs are also claiming back pay equal

12  to the difference between earnings actually paid and the minimum wage. Plaintiffs will also

13  calculate and claim prejudgment interest on all back pay amounts at 12% simple per annum from

14  the week in which wages were due through the date of trial. Discovery is ongoing and this

15  answer will be supplemented.

16

17

18  **FIRST SUPPLEMENTAL ANSWER (MAY 19, 2014):**

19          Plaintiffs provide the following supplemental response with respect to calculation of

20  classwide damages for the period June 16, 2008 through December 31, 2011.

21          Dr. Jeffrey Munson has calculated damages on a week-by-week basis for 478 class

22  members who responded to an hours-worked survey based on their responses and 1099 data

23  produced by defendant. His data, methodology, assumptions, and calculations have been

24

25

26

**DEF BANKERS LIFE 'S RESPONSES 3ᴿᴰ SET OF INTERROGS**
**AND REQUESTS FOR PROD TO PLTF AND PLAINTIFFS'**
**FIRST SUPPLEMENTAL ANSWER TO INTERROGATORY**
**NO. 2**

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

previously provided. His calculation of damages based on the low end of the survey response ranges are $2,176,583 for straight time damages (up to 40 hours in a week, where minimum wage was not paid) and overtime damages of $6,418,600. At the high end of the survey response ranges, the straight time damages are $2,228,658 and overtime damages are $9,963,796. The averages of the low and high values are $2,202,620 and $8,191,198 for straight time and overtime respectively, or a total of $10,393,818.

There are 375 class members during the relevant period who did not respond to the survey but for whom 1099 data were provided. From the class list hire and termination dates, these class members worked a total of 12,482 weeks during the relevant time period, compared to 20,316 weeks for the 478 survey responders. They earned a total of $7,137,059.61, compared to a total of $15,778198.19 for the survey responders. Dividing total earnings by total weeks for the two groups yields average weekly earnings of $571.79 for the nonresponders and $776.64 for the survey responders, which in turn yields a ratio of .736. The average damages of $10,393,818 for the survey responders, divided by their total eligible weeks (20,316), yields an average damage per week of $511.61. Multiplying this figure by the average weekly earnings ratio of .736 for the nonresponders, then by the total eligible weeks of the nonresponders (12,482), yields estimated damages of $4,700,034 for this group of class members.

48 class members responded to the survey, but have no payroll data. These individuals reported an overall non-weighted average of 48.44 hours worked per week, slightly lower than the overall average of about 49.925 for the 478 survey responders with payroll data. According to the class list, this group worked a total of 1,614 weeks during the relevant period. In addition,

DEF BANKERS LIFE 'S RESPONSES 3RD SET OF INTERROGS AND REQUESTS FOR PROD TO PLTF AND PLAINTIFFS' FIRST SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 2

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305

1  there were 77 class members who did not respond to the survey and who are missing payroll

2  data, with total eligible weeks of 2,684 from the class list. Assuming that the absence of payroll

3  data reflects zero earnings during the relevant time period, damages can be conservatively

4  estimated using the average work hours reported by the 48 responders (48.44), the minimum

5  wage for 2009 and 2010 ($8.55) and the total number of eligible weeks (4,298), yielding straight

6  time damages of $1,469,916 (4,298 weeks * 40 hours/week * $8.55/hour) and overtime damages

7  of $465,228 (4,298 * 8.44 * $8.55 * 1.5), or a total of $1,835,144.

8

9       In sum, using the average of the low and high values calculated by Dr. Munson and the

10  above extrapolations, the total class damages for the June 16, 2008 through December 31, 2011

11  time period are estimated at $16,928,996 ($10,393,818 + $4,700,034 + $1,835,144).

12       Discovery is ongoing and this answer may be supplemented.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEF BANKERS LIFE 'S RESPONSES 3RD SET OF INTERROGS
AND REQUESTS FOR PROD TO PLTF AND PLAINTIFFS'
FIRST SUPPLEMENTAL ANSWER TO INTERROGATORY
NO. 2

SCHROETER GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA 98104
Phone (206) 622-8000 • Fax (206) 682-2305