UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHRISTINE DAVID AND RODNEY CLURE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BANKERS LIFE AND CASUALTY COMPANY,

Defendant.

Case No. C14-766RSL

ORDER GRANTING DEFENDANT'S MOTION TO DECERTIFY CLASS

This matter comes before the Court on "Defendant's Motion To Decertify Class." Dkt. # 21. Having reviewed the memoranda and exhibits submitted by the parties, and having heard the arguments presented at the June 11, 2015 hearing in this matter, the Court finds as follows.

## I. BACKGROUND

Defendant Bankers Life and Casualty Co. ("Bankers" or "defendant") is an insurance company that contracts with insurance sales agents ("agents") to sell its products. It has six offices in the state of Washington. Dkt. # 22 (Pl. Resp.) at 16 n 31. Plaintiffs claim that Bankers agents are employees, entitled to overtime pay pursuant to the Washington Minimum Wage Act, RCW 49.46 ("MWA"), id.; whereas defendant contends that its agents are independent contractors, Dkt. # 22.

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 1

Plaintiffs brought this class action in King County Superior Court in June 2011. Defendant removed the case to this Court under the Class Action Fairness Act, 18 U.S.C. § 1332(d) ("CAFA"), asserting that the amount in controversy exceeded $5 million. David v. Bankers Life and Cas. Co., et al., C11-1211RSL (W.D. Wash. Jul. 20, 2011) (Dkt. # 1). On plaintiffs' motion, this Court remanded the case on the grounds that defendant had not shown that the amount in controversy exceeded $5 million. Id. (Dkt. # 38). On remand, the King County Superior Court certified a state-wide class of more than 1,000 agents and former agents. Dkt. # 12-10; Dkt. # 12-16. In May 2014, following class certification, plaintiffs asserted a claim for damages exceeding $16.9 million. Dkt. # 1 (Notice of Removal). Defendant again removed the case under CAFA, id.; and now moves to decertify the class, Dkt. # 21.

The state court order granting class certification defined the class as follows:

> All individuals who worked as agents for Bankers Life and Casualty Company in the State of Washington at any time between June 16, 2008 and December 2, 2013 and who were classified as independent contractors.

Dkt. # 12-16 at 13. Applying Washington's "economic dependence" test for determining whether workers are employees or independent contractors under the MWA, the state court held that common questions of fact and law predominated over individual ones. Dkt. # 7-9 (noting, inter alia, that defendant exerted "a substantial degree of control" over what products agents could sell, as well as their training, prospecting, marketing, sales and customer service methods). The court emphasized that, under Washington law, trial courts should "liberally" construe the requirements of Washington Civil Rule 23 and "err in favor of certification," although they must conduct a "rigorous analysis" of each of CR 23's requirements to determine whether class certification is appropriate. Id. at 6-7 (citations omitted).

Defendant argues that the state court's "liberal construction" of CR 23 is inconsistent with how Fed. R. Civ. P. 23 is interpreted, and that the state court's ruling should be viewed as erroneous or at least revisited now that this action has been removed to this Court. Dkt. # 21 at 10-11. Defendant further contends that the certified class fails to satisfy Federal Rule 23's

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 2

commonality and predominance requirements, proffering evidence that Bankers does not control how its agents perform their job duties and that Bankers agents control their ability to make profits. Id. at 13. Defendant concludes that individualized issues preclude a classwide determination of employment status under the economic-dependence test, and that individualized inquiries are necessary with respect to the MWA's "outside sales" exemption and on the issue of damages. Id.

## II.  LEGAL STANDARDS

### A.   Standard for Maintaining a Class Action

A court must conduct a rigorous analysis to determine whether a purported class satisfies the prerequisites of Fed. R. Civ. P. 23. Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012). Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to maintain a class action. Fed. R. Civ. P. 23(a)(1-4).

Commonality, within the meaning of Rule 23(a)(2), requires that there be "questions of law or fact common to the class." To satisfy this requirement, plaintiffs must demonstrate that the claims of all class members depend on "a common contention" of such nature as "is capable of classwide resolution." Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011). The test is whether the determination of the truth or falsity of such common contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. "What matters . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (emphasis in original). That said, even a single common question "will do." Id. at 2556. Assessing commonality requires understanding the nature of plaintiffs' underlying claims. Parsons v. Ryan, 754 F.3d 657, 676 (9th Cir. 2014); see Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011) ("[T]he merits of the class members' substantive claims are often highly relevant when determining whether to certify a class.").

Class certification is appropriate under Rule 23(b)(3) where (1) questions of law or fact

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 3

1  common to class members predominate over any questions affecting only individual members,
2  and (2) the class action is superior to other available methods for fairly and efficiently
3  adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The predominance inquiry focuses on
4  "the relationship between the common and individual issues" and "tests whether proposed
5  classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler
6  Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citation and quotation marks omitted). The Court
7  considers whether questions common to the class represent significant issues that can be
8  resolved in a single adjudication, id.; and whether adjudicating common issues will promote
9  judicial economy, Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1189 (9th Cir.
10 2001). The presence of some individualized issues does not preclude class treatment; however,
11 when these individualized issues become central to a case, the danger arises that class treatment
12 will not promote efficiency or economy. Marlo v. United Parcel Serv., Inc., 251 F.R.D. 476,
13 484-85 (C.D. Cal. 2008) aff'd, 639 F.3d 942 (9th Cir. 2011). The Court must consider four non-
14 exclusive factors to determine whether class treatment is a superior method of adjudication: (1)
15 the class members' interest in individual litigation; (2) other pending litigation; (3) the
16 desirability of concentrating the litigation in one forum; and (4) the manageability of a class
17 action. Fed. R. Civ. P. 23(b)(3).

18      Ninth Circuit precedent indicates that the Court has broad discretion to decertify a class if
19 it finds that the requirements of Rule 23 have not been satisfied. See United Steel, Paper &
20 Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v.
21 ConocoPhillips Co., 593 F.3d 802, 809 (9th Cir. 2010).

22     **B.**    **Standard for Discerning Employment Status**

23      The MWA broadly defines an employee as any individual permitted to work by an
24 employer. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 867 (2012).[1] In

---

[1] Under the MWA, the term "employee" includes "any individual employed by an employer," subject to a number of exceptions. RCW 49.46.010(3). To "employ" includes "to permit to work." RCW 49.46.010(2). An "employer" is "any individual or entity acting directly or indirectly in the interest of

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 4

Anfinson, the Washington Supreme Court held that the proper test for determining whether a worker was an employee or an independent contractor under the MWA was the "economic-dependence" test. Id. at 868. This test, typically applied under the Fair Labor Standards Act ("FLSA") (after which the MWA was patterned), evaluates whether, as a matter of "economic reality," a worker is dependent on the business to which he renders service or is in business for himself. Id. at 869, 871. The Anfinson court expressly rejected adopting the "right-to-control" test used in other jurisdictions, partly because it defined employee status too narrowly to achieve the broad remedial purposes of the MWA. Id. at 870 ("The economic-dependence test provides broader coverage than does the right-to-control test."). Federal precedent interpreting the FLSA (cited by Anfinson) suggests that the following non-exclusive list of factors should be considered when applying the test:

>   (1) The degree of the alleged employer's right to control the manner in which the work is to be performed;
>   (2) The alleged employee's opportunity for profit or loss depending upon his managerial skill;
>   (3) The alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>   (4) Whether the service rendered requires a special skill;
>   (5) The degree of permanence of the working relationship;
>   (6) Whether the service rendered is an integral part of the alleged employer's business.

Donovan v. Sureway Cleaners, 656 F.2d 1368, 1370 (9th Cir. 1981) (citation omitted). Neither the presence nor the absence of any individual factor is determinative. Id. Control is only significant when it shows that an individual exerts such control over a meaningful part of the business that he stands as a separate economic entity. Id. at 1371 (citation and quotation marks omitted). Each factor is a tool used to gauge the economic dependence of the alleged employee, and each factor must be applied with this ultimate concept in mind. Hopkins v. Cornerstone Am., 545 F.3d 338, 343 (5th Cir. 2008).

---

an employer in relation to an employee." RCW 49.46.010(4).

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 5

## III.  DISCUSSION

### A.  Whether to Defer to the State Court Certification Decision

Plaintiffs argue that there is no difference between Washington's CR 23 and Fed. R. Civ. P. 23, and that the state court undertook a "rigorous analysis" of whether certification was warranted.  Dkt. # 22 at 15-16.  Defendant emphasizes that the state court applied a "liberal" construction of CR 23 which is inconsistent with how Fed. R. Civ. P. 23 is interpreted and applied.  Dkt. # 21 at 10-11.

While Rule 23 is liberally construed in the area of securities litigation, the Court finds no Ninth Circuit precedent adopting such a liberal construction in cases similar to this one. Authority suggests that doing so here would be inappropriate.  Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc., 725 F.3d 1213, 1218 (10th Cir. 2013) (indicating that district court erred by "liberally" construing class certification requirements, resolving doubts in favor of certification).  Furthermore, the Court is not persuaded that it should defer to the state court's certification decision.  See Trahan v. U.S. Bank Nat'l Ass'n, 2015 WL 75139, at *8 (N.D. Cal. Jan. 6, 2015) (decertifying action certified in state court on predominance and superiority grounds).  CR 23 and Fed. R. Civ. P. 23 are identically worded in relevant part, but they have matured under different bodies of precedent.  The Court finds it appropriate to conduct a de novo review of the class certification decision, applying Fed. R. Civ. P. 23.

### B.  Evidence Presented on Most Economic-Dependence Factors

Plaintiffs argue that most factors considered under the economic-dependence test support finding Bankers agents to be employees, and that this can be shown through common evidence. Agents invest almost nothing in the job, using personal laptops, cell phones, car insurance, etc. that they acquire independently from their work.  Glassburn Decl. ¶ 5.[2]  Bankers does not require any new agents to have any experience in the insurance industry or in sales, and the majority

---

[2] Dkt. # 9-5.

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 6

have neither. Layton Decl. ¶ 5.[3] The company holds out its agents as "career" agents internally and to the public, Berger Decl. Exh. 49-50 (Promotional Brochures),[4] and offers agent positions with the promise of long-term employment and advancement, Layton Decl. ¶ 6. Bankers' agents are a critical part of its business model. On these points, defendant only disputes the amount that agents invest in the job, noting that some agents personally incur substantial business expenses (including home office equipment, gifts for clients, etc.). Dkt. # 21 at 24; Austin Decl. ¶ 4.[5]

### C. Evidence Presented on Control and Power to Determine Profit and Loss

#### 1. Plaintiffs' Evidence

Plaintiffs present documents and 21 declarations to establish that Bankers' agents operate under a common regime of control, and argue that this supports class certification (as well as a finding that Bankers agents are employees). According to plaintiffs' evidence, all agents signed the same form contract with the same terms and conditions. Berger Decl. Exh. 17 (Agent Contract).[6] All agents are paid under the same commission schedule, which is subject to unilateral change by defendant. Berger Decl. Exh. 17 (Agent Contract) at BL 8, Exh. 40-41 (Supplement and Contract).[7] New agents are required to attend training programs for their first year with Bankers, for which they are expected to study and participate. Clure Decl. ¶ 5; Berger Decl. Exh. 7 (Branch Sales Manager Manual, or "BSM Manual") at BL 981-82.[8] All agents must obtain defendant's approval for marketing and advertising and use defendant's business cards. Berger Decl. Exh. 17 (Agent Contract) at BL 10. All of agents' clients belong to defendant, and not to the agents, and the clients remain with defendant when the agents leave the company. Layton Decl. ¶ 15. Bankers decides what products (including non-Bankers products) a given agent is allowed to sell. Second Layton Decl. ¶¶ 3-8.[9] No agent can set the price of

---

[3] Dkt. # 9-11.
[4] Dkt. # 10-4.
[5] Dkt. # 10-14.
[6] Dkt. # 10-2.
[7] Dkt. # 10-3.
[8] Dkt. # 10-2.
[9] Dkt. # 11-12.

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 7

what he sells. Dkt. # 22 at 11. Some declarants state that they were "captive agents" who could only sell Bankers products. Cummings Decl. ¶ 15.[10] Bankers discourages or prohibits agents from pursuing outside employment. Layton Decl. ¶ 16.

Bankers controls the distribution of sales leads, rewarding favored agents with better leads. Layton Decl. ¶¶ 10-11. Defendant provides standard telephone scripts to which agents must adhere, Layton Decl. ¶ 10; and expects agents to complete certain forms during and following sales calls, Dkt. # 22 at 7. Defendant sets targets for agents regarding the number of calls and in-person appointments they should make, and monitors agents' compliance with these expectations. Layton Decl. ¶ 8; Berger Decl. Exh. 12 (New Agent Training Flyer).[11] Agents are chastised for failing to return client calls. Second Berger Decl. Exh. 4.[12]

Defendant controls agents' work schedules, with the schedules for new agents and struggling agents being strictly dictated by defendant. Layton Decl. ¶ 3; Berger Decl. Exh. 3 ("Office Schedule") (dictates days that agents must be in office).[13] The latitude an agent can enjoy in dictating his own schedule is curtailed if his performance falters. Layton Decl. ¶ 3. Agents attend mandatory meetings, and on days when not in the office, they must be in the field meeting with potential customers. Layton ¶ 9; Berger Decl. Exh. 3. Managers monitor agents' in-office performance, and agents are required to report their progress in field appointments to their managers. Clure Decl. ¶ 9;[14] Hoff Decl. ¶ 5.[15] Agents must get advance approval to take time off from work. Layton Decl. ¶ 4. Agents must comply with a dress code. Hoff Decl. ¶ 6.

### 2. Defendant's Evidence

Defendant relies heavily on the declarations of 50 agents and several managers to demonstrate that many agents have had very different experiences from those described by plaintiffs and, consequently, establish that assessing a given agent's employment status will

---

[10] Dkt. # 9-1.
[11] Dkt. # 10-2.
[12] Dkt. # 12-18.
[13] Dkt. # 10-2.
[14] Dkt. # 8-15.
[15] Dkt. # 9-8.

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 8

require individualized inquiry. According to these declarations, some agents work from home and choose when to come into a Bankers office. LaGuardia Decl ¶ 5; Labizon Decl ¶ 4.[16] Agents do not have to report their appointments or activities to their managers. Cournyer Decl. ¶ 14.[17] Agents are not required to attend weekly meetings and must only attend those related to legal compliance. Perrins Decl. ¶ 13.[18] Agents enjoy complete control over their schedules and work hours. Cournyer Decl. ¶ 8; Berryhill Decl. ¶ 12.[19] Agents choose the products they sell, including non-Bankers products. Campbell Decl. ¶ 3.[20] Agents may choose their own sales techniques and prospecting methods; while agents may purchase "leads" from defendant, agents may also cultivate their own sales leads through personal referrals, word of mouth, and other sources. Perrins Decl. ¶ 15. Agents are permitted to deviate from company sales scripts so long as they do not deviate from the "compliance-related" elements. Gans Decl. ¶ 10.[21] Some agents hold other jobs. Maag Decl. ¶ 5 (owns retail stores that sell pet supplies).[22]

Defendant highlights three reasons why its declarants have had different experiences from plaintiffs' declarants. First, more successful and established agents enjoy greater independence. Dkt. # 21 at 24 (quoting Clure Dep. 86:13-87:7). Second, the trainings that plaintiffs' declarants had to attend are only provided to new agents, and thus many agents did not have to attend them during the class period. Id. at 25. Third, named plaintiffs and certain declarants enjoyed less independence than other agents during the class period because of the management style of a particular former Branch Sales Manager ("BSM"), Albert Hawks (a former individual defendant in this case), whose style was not shared by other BSMs in Washington State or by his successor. Id.; Bennett Decl. ¶ 11.[23] Defendant emphasizes that all agents sign a contract

---

[16] Dkt. # 10-15.
[17] Dkt. # 10-14.
[18] Dkt. # 10-15.
[19] Dkt. # 10-12.
[20] Dkt. # 10-14.
[21] Dkt. # 10-14.
[22] Dkt. # 10-15.
[23] Dkt. # 10-14.

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 9

identifying them as contractors, that they pay their own expenses, and that agents' profits are dictated by their skill as salespeople. Dkt. # 21 at 15, 18.

Nevertheless, defendant does not dispute the following propositions, many of which are supported by common evidence plaintiffs have proffered (namely defendant's standard agent contract, agent manuals, workshop training materials and compliance materials). Any agent who wishes to sell non-Bankers products must first receive defendant's approval.[24] Defendant controls the pricing of its products and how its sales leads are distributed. Agents' clients belong to Bankers and remain with defendant after agents leave the company. Agents may not advertise or market without defendant's approval. New agents must undergo training, and agents must comply to some extent with company-approved scripts. Finally, as the state court found, agents do not lease independent commercial space. Dkt. # 12-10 at 6.

### 3. Whether To Discount Evidence

Defendant argues that the Court should disregard much of plaintiffs' evidence of control in its Rule 23 analysis because certain control measures are necessary to ensure compliance with federal and state regulations. Dkt. # 21 at 18-20.[25] Defendant argues that efforts to ensure regulatory compliance cannot evidence control for the purpose of determining whether agents are employees, and thus cannot help the Court determine whether there is a common answer to this question. Id. While this position finds some support, see Oestman v. Nat. Farmers Union Ins. Co., 958 F.2d 303, 306 (10th Cir. 1992), the Court cannot determine from the existing record the extent to which defendant's measures were mandated by regulation, or whether defendant exceeded what was necessary to ensure compliance in order to control its agents. The Court did not discount plaintiffs' evidence on this basis in considering the instant motion.

---

[24] The record also suggests, and Bankers does not deny, that Bankers decides which agents may pursue outside employment. See Layton Decl. ¶ 16 (Bankers prohibited outside employment); Wimer Decl. (Dkt. # 11-14) ¶ 4 (supervisors discouraged declarant from pursuing part-time outside employment).

[25] Defendant cites its mandatory training for new agents; its requirement that agents document their appointments with clients; its requirement that agents use company-approved scripts; its requirement that it approve agents' use of marketing and advertising materials; and its use of call-monitoring technology. Id.

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 10

1    Plaintiffs argue that defendant's declarations should be discounted because they come
2 from current employees, suggesting that the Court should presume that these declarants are
3 testifying in a light favoring their employer in order to avoid professional reprisal. Dkt. # 22 at
4 10. The Court finds no controlling authority holding that current employees' declarations must
5 be discounted, and finds no reason to doubt their veracity in this case. The Court considered
6 defendant's declarations and did not discount them.

### E.    Rule 23 Analysis

#### 1. Commonality

A central question in this case is whether Bankers agents may be considered employees under the economic-dependence test. As explained infra, the common evidence presented does not provide for a classwide answer resolving this issue in "one stroke." Wal-Mart, 131 S.Ct. at 2551. Plaintiffs emphasize that they need only assert a single common question in order to satisfy Rule 23(a)(2), and suggest that the several economic-dependence factors for which they have undisputed common evidence suffice to meet this standard. Even assuming that commonality is satisfied, the Court finds that common questions do not predominate over individual ones.

#### 2. Predominance and Superiority

##### (a) Economic-Dependence Test

The Court cannot find that common questions predominate. Across several factors of the economic-dependence test, plaintiffs have presented common issues and common evidence suggesting a common answer. Nevertheless, the evidence establishes that some agents, depending on such factors as their seniority and their manager, enjoy control over their schedules, location and work hours; can forego reporting to managers; are permitted to sell non-Bankers products; and are able to hold other employment. This is not the case for all class members, and such variations will materially affect employment-status analysis. See Walker v. Bankers Life & Cas. Co., 2008 WL 2883614, at *10-12 (N.D. Ill. July 28, 2008) (decertifying

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 11

1   class of Bankers agents on predominance grounds, applying California's "right to control" test).

2   The common evidence presented here (namely agents' contracts) is insufficient to support a

3   classwide finding in light of agents' varied experiences.[26]  The Court recognizes that employees'

4   experiences under even completely uniform policies will differ, that no one factor in the

5   economic-dependence test (i.e., control) is dispositive, and that common questions need only

6   predominate over individual ones to maintain a class action.  Nevertheless, the record does not

7   support a classwide determination of whether every Bankers agent in the class was economically

8   dependent on the company during the class period.

9       Plaintiffs counter that any autonomy that an agent enjoys is at defendant's discretion.

10  Because Bankers decides which of its agents to treat like contractors, plaintiffs suggest, agents'

11  varied experiences cannot create material individualized fact issues; the overriding common

12  factor is defendant's power over its agents' working conditions and performance.  Plaintiffs

13  emphasize that the control factor is not dispositive in the economic-dependence test, and that

14  defendant's evidence is only probative with respect to this factor.[27]  These arguments are

15  unpersuasive.  Looking at the economic reality of agents' experiences, it is clear that different

16  class members enjoyed different relationships with the company during the class period.  Some

17  were more completely dependent on Bankers (such as plaintiff David), whereas others were

18  moreso in business for themselves (such as agent Melissa Cournyer).[28]  The fact that defendant

19  had some level of control over all of them does not strongly suggest that all agents are

---

[26] Some of plaintiffs' evidence that all agents are employees is not compelling.  For example, other courts have held that employer restrictions on insurance agent advertising and the fact that insurance agents are "captive agents" do not in themselves indicate that the insurance company controls them as it would employees.  Lockett v. Allstate Ins. Co., 364 F. Supp. 2d 1368, 1378 (M.D. Ga. 2005).  Furthermore, payment on commission is typically recognized as signaling independent contractor status.  Id. at 1379.  While Lockett and Walker prioritized the control factor and were not applying the MWA's economic-realities test, their reasoning is persuasive, here.

[27] Plaintiffs argue that defendant's evidence does not show that agents' managerial skill can affect their profits or losses.  Dkt. # 22 at 13.

[28] Dkt. # 10-14 (agent dictated her own hours, did not have to report to her managers, hired and paid an assistant and sold non-Bankers products).

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 12

employees; any company employing a contractor would have some control over his performance by nature of the its power to fire him.

Determining whether class members are employees or contractors under the economic-dependence test would require an individualized inquiry into each agent's employment experience. It follows that individualized fact questions predominate over common ones. See Edwards v. Publishers Circulation Fulfillment, Inc., 268 F.R.D. 181, 189 (S.D.N.Y. 2010) (declining to certify class of workers claiming to be employees where case required "an individualized assessment of [defendant's] relationship" with each worker). Class treatment would be unmanageable given the need for individualized inquiry. The class must be decertified.

### (b) The Outside Sales Exception

The Court also finds that the MWA's outside sales exemption precludes a finding that common issues predominate. Under the MWA, workers engaged in exempt activities (such as sales) are not employees if they are regularly and customarily engaged away from the employer's place of business and regulate their own hours worked while on the employer's premises. See WAC 296-128-540(1).[29] To fall under this exemption, a worker must spend 20% or less of his work hours on non-exempt tasks. See WAC 296-128-540(2). Also, a worker only falls under this exemption when he is paid on a guaranteed salary, commission or fee basis and if he is advised of his status as an "outside salesman." WAC 296-128-540(3).

Plaintiffs suggest that the exemption is inapplicable because agents were not advised on their "outside salesmen" status. See Dkt. # 22 at 25; Layton Decl. ¶ 18. Defendant counters that

---

[29] Under RCW 49.46.010(3)(c), the term "employee" under the MWA does not include "any individual employed . . . in the capacity of outside salesperson[.]" The relevant state regulation states:
> The term "individual employed in the capacity of outside salesman" in [RCW 49.46.010(3)(c)] shall mean any employee:
> (1) Who is employed for the purpose of and who is customarily and regularly engaged away from his employer's place or places of business, as well as on the premises (where the employee regulates his own hours and the employer has no control over the total number of hours worked) in the following alternative activities:
> (a) In making sales; including any sale, exchange, contract to sell, consignment for sale, shipment for sale or other disposition[.]

WAC 296-128-540(1).

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 13

agents were told they would be performing sales for commissions and without overtime, and argues that this suffices, Dkt. # 28 at 16; Coen Decl. ¶ 6.[30]  Defendant's argument is persuasive.

A defense that requires individualized inquiries may prevent common issues from predominating in a case, including the FLSA's outside sales exemption.[31]  See In re Wells Fargo Home Mortgage Overtime Pay Litig., 268 F.R.D. 604, 611 (N.D. Cal. 2010) (exemption was significant factor in finding that common issues did not predominate).  Plaintiffs have not presented common evidence permitting a classwide determination as to whether all agents in the class fall under Washington's exemption.  If this class action were maintained, the Court would have to undertake individualized inquiries into each agent's ability to regulate his own hours.  Because a central question in this case is not subject to common proof and would necessitate mini-trials that would overwhelm the litigation, common issues cannot predominate.  See id.[32]

## IV.  CONCLUSION

For all of the foregoing reasons, defendant's motion to decertify the class is GRANTED. Dkt. # 21.

DATED this 30th day of June, 2015.

_MRT S Lasnik_
Robert S. Lasnik
United States District Judge

---

[30] Dkt. # 10-14.

[31] The key difference between the MWA's outside sales exemption and that of the FLSA is that the MWA's exemption applies where the employee is "customarily and regularly" engaged in sales activity and no more than 20% of the employee's time is spent on nonexempt tasks, whereas the FLSA's exemption applies where the employee's "primary duty" is making outside sales, 29 C.F.R. § 541.500(a).  Troy v. Kehe Food Distributors, Inc., 276 F.R.D. 642, 648 (W.D. Wash. 2011).

[32] In light of the foregoing, the Court does not reach whether individualized inquiry is necessary on the issue of damages.

ORDER GRANTING DEFENDANT'S
MOTION TO DECERTIFY CLASS - 14