1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   CHRISTINE DAVID AND RODNEY
    CLURE, individually and on behalf of all
10  others similarly situated,

11              Plaintiffs,

12         v.

13  BANKERS LIFE AND CASUALTY
    COMPANY,
14
               Defendant.

NO. C14-766RSL

ORDER DENYING MOTION TO
CERTIFY A CLASS OF NEW
AGENTS

15

16       This matter comes before the Court on "Plaintiffs' Motion to Certify a Class of New

17  Agents."  Dkt. # 45.  Having reviewed the memoranda and exhibits submitted by the parties, and

18  having heard the arguments presented at the April 21, 2016, hearing in this matter, the Court

19  finds as follows.

20                              **I.  BACKGROUND**

21       In its previous order granting defendant's motion to decertify the class, the Court set forth

22  a detailed history of this action and therefore will recount only the most relevant facts here.  See

23  Dkt. # 40 at 1-3.  Defendant Bankers Life and Casualty Co. is an insurance company that

24  contracts with insurance sales agents to sell its products.  Plaintiffs claim that Bankers agents are

25  employees, entitled to overtime pay pursuant to the Washington Minimum Wage Act (MWA)

26  49.46.

27       Prior to removal to this Court, the state court certified a class defined as:

28  ORDER DENYING MOTION TO CERTIFY
    A CLASS OF NEW AGENTS - 1

1
2

> All individuals who worked as agents for Bankers Life and Casualty Company in the State of Washington at any time between June 16, 2008 and December 2, 2013 and who were classified as independent contractors.

3 Id. at 2. On defendant's motion, this Court decertified the class, finding that the class

4 certification requirements of predominance and superiority were not met with respect to the

5 economic-dependence test and the outside sales exception. Id. at 11-14. Plaintiffs now move to

6 certify a more limited class, defined as:

7
8
9

> All persons hired by Bankers who worked as Agents (or in similar job classifications) during the three years prior to filing of the complaint and thereafter whom Bankers classified as independent contractors, whose first year with the Company (or any portion thereof) occurred (a) during the class period and (b) while working in [the] Seattle Region under Regional Manager Al Hawks.

10 Dkt. # 45 at 17.

11 ## II.  LEGAL STANDARDS

12 The Court previously set forth the relevant legal standards, but will do so again here for

13 the ease of the reader.

14 **A.     Standard for Maintaining a Class Action**

15 A court must conduct a rigorous analysis to determine whether a purported class satisfies

16 the prerequisites of Fed. R. Civ. P. 23. Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th

17 Cir. 2012). Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality

18 and adequacy of representation in order to maintain a class action. Fed. R. Civ. P. 23(a)(1-4).

19 Commonality, within the meaning of Rule 23(a)(2), requires that there be "questions of

20 law or fact common to the class." To satisfy this requirement, plaintiffs must demonstrate that

21 the claims of all class members depend on "a common contention" of such nature as "is capable

22 of classwide resolution." Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011). The test

23 is whether the determination of the truth or falsity of such common contention "will resolve an

24 issue that is central to the validity of each one of the claims in one stroke." Id. "What matters . .

25 . is not the raising of common 'questions'—even in droves—but, rather the capacity of a class-

26 wide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id.

27
28 ORDER DENYING MOTION TO CERTIFY
A CLASS OF NEW AGENTS - 2

1   (emphasis in original).  That said, even a single common question "will do."  <u>Id.</u> at 2556.

2   Assessing commonality requires understanding the nature of plaintiffs' underlying claims.

3   <u>Parsons v. Ryan</u>, 754 F.3d 657, 676 (9th Cir. 2014); <u>see</u> <u>Ellis v. Costco Wholesale Corp.</u>, 657

4   F.3d 970, 981 (9th Cir. 2011) ("[T]he merits of the class members' substantive claims are often

5   highly relevant when determining whether to certify a class.").

6        Class certification is appropriate under Rule 23(b)(3) where (1) questions of law or fact

7   common to class members predominate over any questions affecting only individual members,

8   and (2) the class action is superior to other available methods for fairly and efficiently

9   adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry focuses on

10  "the relationship between the common and individual issues" and "tests whether proposed

11  classes are sufficiently cohesive to warrant adjudication by representation." <u>Hanlon v. Chrysler</u>

12  <u>Corp.</u>, 150 F.3d 1011, 1022 (9th Cir. 1998) (citation and quotation marks omitted).  The Court

13  considers whether questions common to the class represent significant issues that can be

14  resolved in a single adjudication, <u>id.</u>; and whether adjudicating common issues will promote

15  judicial economy, <u>Zinser v. Accufix Research Institute, Inc.</u>, 253 F.3d 1180, 1189 (9th Cir.

16  2001).  The presence of some individualized issues does not preclude class treatment; however,

17  when these individualized issues become central to a case, the danger arises that class treatment

18  will not promote efficiency or economy.  <u>Marlo v. United Parcel Serv., Inc.</u>, 251 F.R.D. 476,

19  484-85 (C.D. Cal. 2008) <u>aff'd</u>, 639 F.3d 942 (9th Cir. 2011).  The Court must consider four non-

20  exclusive factors to determine whether class treatment is a superior method of adjudication: (1)

21  the class members' interest in individual litigation; (2) other pending litigation; (3) the

22  desirability of concentrating the litigation in one forum; and (4) the manageability of a class

23  action.  Fed. R. Civ. P. 23(b)(3).

24  **B.**    **Standard for Discerning Employment Status**

25       The MWA broadly defines an employee as any individual permitted to work by an

26

27  ORDER DENYING MOTION TO CERTIFY
28  A CLASS OF NEW AGENTS - 3

employer.  Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 867 (2012).[1]  In

Anfinson, the Washington Supreme Court held that the proper test for determining whether a

worker was an employee or an independent contractor under the MWA was the "economic-

dependence" test.  Id. at 868.  This test, typically applied under the Fair Labor Standards Act

("FLSA") (after which the MWA was patterned), evaluates whether, as a matter of "economic

reality," a worker is dependent on the business to which he renders service or is in business for

himself.  Id. at 869, 871.  The Anfinson court expressly rejected adopting the "right-to-control"

test used in other jurisdictions, partly because it defined employee status too narrowly to achieve

the broad remedial purposes of the MWA.  Id. at 870 ("The economic-dependence test provides

broader coverage than does the right-to-control test.").  Federal precedent interpreting the FLSA

(cited by Anfinson) suggests that the following non-exclusive list of factors should be

considered when applying the test:

> (1)  The degree of the alleged employer's right to control the manner in which the work is to be performed;
> (2)  The alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3)  The alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> (4)  Whether the service rendered requires a special skill;
> (5)  The degree of permanence of the working relationship;
> (6)  Whether the service rendered is an integral part of the alleged employer's business.

Donovan v. Sureway Cleaners, 656 F.2d 1368, 1370 (9th Cir. 1981) (citation omitted).  Neither

the presence nor the absence of any individual factor is determinative.  Id.  Control is only

significant when it shows that an individual exerts such control over a meaningful part of the

business that he stands as a separate economic entity.  Id. at 1371 (citation and quotation marks

omitted).  Each factor is a tool used to gauge the economic dependence of the alleged employee,

and each factor must be applied with this ultimate concept in mind.  Hopkins v. Cornerstone

---

[1] Under the MWA, the term "employee" includes "any individual employed by an employer," subject to a number of exceptions.  RCW 49.46.010(3).  To "employ" includes "to permit to work."  RCW 49.46.010(2).  An "employer" is "any individual or entity acting directly or indirectly in the interest of an employer in relation to an employee."  RCW 49.46.010(4).

ORDER DENYING MOTION TO CERTIFY
A CLASS OF NEW AGENTS - 4

Am., 545 F.3d 338, 343 (5th Cir. 2008).

## III.  DISCUSSION

Based on the evidence presented in the decertification briefing, the Court concluded that common issues did not predominate and that a class action was not a superior method for adjudicating the controversy.  Dkt. # 40 at 11-14.  The Court made this finding with respect to both the economic-dependence test and the outside sales exception.  Id.  The Court will analyze whether the evidence set forth by the parties regarding the newly-defined class alters the Court's prior analysis after briefly setting forth its reasons for considering the motion to certify a narrower class.[2]

**A.     Consideration of Second Motion to Certify Class**

Defendant argues that plaintiffs have no basis to bring a second motion to certify a class.  Dkt. # 59 at 18-20.  This Court, however, has "ample discretion to consider (or to decline to consider) a revised class certification motion after an initial denial."  In re Initial Pub. Offering Sec. Litig., 483 F.3d 70, 73 (2d Cir. 2007).  It "is not uncommon for district courts to permit renewed certification motions that set out a narrower class definition . . . ."  Hartman v. United Bank Card, Inc., 291 F.R.D. 591, 597 (W.D. Wash. 2013).  Typically, reconsideration of a class ruling occurs because of a change in circumstances, without which "'courts should not condone a series of rearguments on the class[.]'"  Id. (quoting Newberg on Class Actions § 7:47).  Courts are reluctant "to allow parties to have a 'second bite at the apple' by relitigating issues that have already been decided" and therefore "uniformly apply the stringent law of the case standard to

---

[2] Plaintiffs, in their reply, attached the full deposition transcripts of eight putative class members and a new declaration from a putative class member.  Dkt. ## 67 Exs. 1-8; 68.  Defendant requested that the Court strike this evidence and arguments relying on it.  Dkt. # 70.  The Court has not relied upon this new evidence and therefore finds it unnecessary to rule on this issue. Plaintiffs should note, however, that new evidence submitted on reply is ordinarily stricken, and that parties are to submit "only those excerpts of referenced exhibits that are directly germane to the matter under consideration."  Nautilus Grp., Inc. v. Icon Health & Fitness, Inc., 308 F. Supp. 2d 1208, 1214 (W.D. Wash. 2003), aff'd, 372 F.3d 1330 (Fed. Cir. 2004); Western District of Washington Electronic Filing Procedures at 8 (Dec. 20, 2012).

ORDER DENYING MOTION TO CERTIFY
A CLASS OF NEW AGENTS - 5

1    motions to reconsider initial class certification decisions." Newberg on Class Actions § 7:35.

2         The Court is unpersuaded that the United States Department of Labor opinion letter cited

3    by plaintiffs justifies reconsideration of its prior decision decertifying the class.  For one, it is the

4    Department's interpretation of the Fair Labor Standards Act, rather than the MWA.  Moreover, it

5    simply provides "additional guidance regarding the application of the standards for determining

6    who is an employee" under the FLSA; it does not set forth new standards.  Opinion Letter Fair

7    Labor Standards Act, 2015 WL 4449086, at *1 (July 15, 2015).  Likewise, the "new evidence"

8    plaintiffs rely upon was available at the time that the class was previously certified and at the

9    time that the parties briefed defendant's motion to decertify the class.  The only reason that it is

10   "new" is that plaintiffs have now gathered it and provided it to the Court in support of their

11   motion to certify a narrower class.  In this case, however, because the class was initially certified

12   in state court and this Court's first analysis under Rule 23 occurred on defendant's motion to

13   decertify the class, the Court is willing to exercise its discretion to consider certification of a

14   narrower class.

15   **B. Predominance and Superiority: Economic-Dependence Test**

16        Although plaintiffs previously presented common issues and common evidence across

17   several factors of the economic-dependence test, the evidence also established "that some agents,

18   depending on such factors as their seniority and their manager, enjoy control over their

19   schedules, location and work hours; can forego reporting to managers; are permitted to sell non-

20   Bankers products; and are able to hold other employment."  Dkt. # 40 at 11.  After reviewing the

21   economic reality of agents' experiences, it was "clear that different class members enjoyed

22   different relationships with the company during the class period.  Some were more completely

23   dependent on Bankers . . . whereas others were moreso in business for themselves . . . ."  Id. at

24   12.  The Court was not persuaded that the agents were employees based upon the fact that

25   Bankers had some level of control over all agents.  Id. at 12-13.  Given the evidence presented,

26   determining "whether class members are employees or contractors under the economic-

27

28   ORDER DENYING MOTION TO CERTIFY
     A CLASS OF NEW AGENTS - 6

1   dependence test would require an individualized inquiry into each agent's employment

2   experience." <u>Id.</u> at 13.  Therefore, individualized fact questions predominated over common

3   ones, rendering class treatment unmanageable.  <u>Id.</u>

4        Factors that previously led the Court to conclude that putative class members had

5   different relationships with Bankers are present even in the more circumscribed proposed class.

6   Al Hawks, the Regional Manager of the Seattle Region, oversaw the Bankers Life offices in

7   Bellevue, Burlington, and Walla Walla.  Dkt. # 11-1 (Hawkes Decl.) at 3 ¶ 5.  In this role,

8   Hawks did not directly supervise sales agents; instead, he oversaw Unit Sales Managers and Unit

9   Supervisors, who were the primary points of contact for the sales agents.  <u>Id.</u> at 3 ¶¶ 9-10.  The

10  level of supervision and control varied depending upon the Unit Sales Manager to whom an

11  agent reported.  For example, Thomas Whitten, a Unit Sales Manager, imposed a "strict

12  schedule, required number of appointments, mandatory meetings, [and] dress code" on agents in

13  the Walla Walla branch.  Dkt. # 55 (Whitten Decl.) at 3 ¶ 10.  In contrast, some Unit Sales

14  Managers in the Bellevue office did not require agents to attend meetings, follow a particular

15  schedule, or use a specific sales method.  Dkt. # 10-8 (Dean Decl.) at 4-5 ¶¶ 7-10; Dkt. # 55

16  (Schlichting Decl.) at 2-3 ¶¶ 5, 6, 9, 11.  These differences are borne out in the experiences of

17  the agents as well.  For example, in contrast to the agents identified by plaintiffs, Mark Schwartz

18  structured his time as he chose, would "brush off" managers who checked in with him on field

19  days, and missed some meetings without consequence.  Dkt. # 63 (Schwartz Decl.) at 2 ¶¶ 3-6.

20  Putative class members also sold non-Bankers products and maintained other employment.  Dkt.

21  ## 10-14 (Adado Decl.) at 10 ¶ 11; 51 (Winston Decl.) at 4 ¶ 16.  In addition, putative class

22  members differed in their lead generation and sales techniques.  <u>See, e.g.</u>, Dkt. ## 10-15

23  (Pridgeon Decl.) at 86 ¶¶ 10-11; 60-2 (Levy Dep.) at 25-26, 29.

24        Plaintiffs rely in part on Banker's allegedly common corporate policies in support of their

25  motion.  While "uniform corporate polices will often bear heavily on question of predominance

26  and superiority[,]" their importance depends upon "the extent that they reflect the realities of the

27

28  ORDER DENYING MOTION TO CERTIFY
    A CLASS OF NEW AGENTS - 7

1  workplace . . . ." In re Wells Fargo Home Mortgage Overtime Pay Litig., 571 F.3d 953, 958 (9th

2  Cir. 2009).  Here, while there are some Bankers documents that suggest common issues

3  predominate, they are contradicted by the realities of the workplace as described by the agents,

4  managers, and supervisors in their declarations and depositions.  The Court is cognizant of the

5  fact that Bankers's documents such as the scripts and "Steps for Success" may be followed more

6  closely by agents newer to Bankers.  Plaintiffs' attempt to limit the class to agents who had at

7  least a portion of their first year during the class period makes good sense using this reasoning.

8  While plaintiffs' reasoning is interesting, the Court has not found any cases in which a class was

9  circumscribed by the length of its members' relationships with the defendant where there was

10  not otherwise any change in title, responsibilities, or contractual relationship.  Even in the

11  absence of the varied experiences of the agents that were outlined above, the Court would be

12  reluctant to certify a class with such a cutoff.

13     For the foregoing reasons, determining whether agents were employees or contractors

14  under the economic-dependence test would require individualized inquiry, as the Court

15  previously held.  Common issues therefore do not predominate, and it follows that a class action

16  would not be a superior method for adjudicating this controversy.

17  **C. Predominance and Superiority: The Outside Sales Exemption**

18     The Court previously noted that a "defense that requires individualized inquiries may

19  prevent common issues from predominating in a case[,]" including the MWA's outside sales

20  exemption.  Dkt. # 40 at 14.  Under the MWA, whether an agent is an exempt outside sales

21  person depends upon whether he or she "regulates his or her own hours and the employer has no

22  control over the total number of hours worked."  WAC 296-128-540(1).  The evidence presented

23  indicates that at least some of the putative class members exercised significant control over their

24  schedules.  The Court therefore reaches the same conclusion that it did previously: "If this class

25  action were maintained, the Court would have to undertake individualized inquiries into each

26  agent's ability to regulate his own hours.  Because a central question in this case is not subject to

27

28  ORDER DENYING MOTION TO CERTIFY
 A CLASS OF NEW AGENTS - 8

common proof and would necessitate mini-trial that would overwhelm the litigation, common issues cannot predominate." Dkt. # 40 at 14.

### IV. CONCLUSION

For all of the foregoing reasons, plaintiffs' motion to certify the a class of new agents (Dkt. # 45) is DENIED.


DATED this 6th day of May, 2016.



Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION TO CERTIFY
A CLASS OF NEW AGENTS - 9